UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>vs.<br><br>CHRISTIAN DEMARCO THOMAS,<br><br>            Defendant. | Case No.: 2:22-cr-00129-GMN-DJA<br><br>**ORDER** |

Pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Daniel J. Albregts, (ECF No. 60), recommending that the Court deny Defendant Christian DeMarco Thomas's Motion to Suppress, (ECF No. 33). Both the Government and Defendant timely filed Objections, (ECF Nos. 72, 73), to the R&R.

Also pending before the Court is Defendant's Motion for Leave to File a Reply, (ECF No. 78), to the Government's Response, (ECF No. 77), to Defendant's Objection to the Report and Recommendation.

For the reasons discussed below, the Court **VACATES** the Magistrate Judge's R&R, **REMANDS** this proceeding to the Magistrate Judge to examine whether the Defendant has standing to contest the underlying searches considering the Turo records introduced by the Government, and **DENIES as moot** Defendant's Motion for Leave to File a Reply because the underlying R&R for which Defendant seeks to file a Reply to is vacated pursuant to this Order.

I.  **BACKGROUND**

Following Defendant's arrest during an encounter between Defendant and the Las Vegas Metro Police Department ("LVMPD"), Defendant was indicted for one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of

Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Am. Indictment, ECF No. 17). The specific facts underlying the encounter are outlined below.

On April 21, 2022, LVMPD Patrol Officer Michael Chatterton was working the swing shift alone in a marked patrol vehicle wearing a body camera. (Evidentiary Hear'g AM Tr. 15:11–15, 17:2–6, ECF No. 50). Around 11:15 p.m., a Ford Taurus caught Officer Chatterton's attention because it was "ping-ponging back and forth in its lane" and slowing down despite no vehicle being in front of it, signs of possible impaired or distracted driving. (*Id.* 17:20–18:11). Officer Chatterton activated his body camera and ran a DMV registration check on the Taurus. (*Id.* 20:6–19). A hit returned indicating the car was registered to Brandon Knowles and was possibly stolen. (*Id.*). "Possibly stolen" meant the car had been reported stolen but no officer followed up with an interview of the individual who reported it stolen nor submitted a subsequent report. (*Id.*).

The vehicle subsequently stopped and pulled into a residential driveway on 7th Street near East Park Paseo in what Officer Chatterton described as a "high crime area."[1] Officer Chatterton activated his lights and advised dispatch that he was preparing to perform a high-risk stop and take the driver "into custody."[2] (*Id.* 27:16–20). Officer Chatterton exited his vehicle and issued commands to the driver as he exited the Taurus. The driver was later identified as Defendant. (R&R 3:1–2).

Officer Chatterton handcuffed Defendant and explained to him the vehicle was possibly stolen. (Evidentiary Hear'g AM Tr. 30:8–14). Officer Chatterton testified that Defendant was "kind of . . . in shock" upon hearing the vehicle was possibly stolen and stated that he "just

---

[1] Officer Chatterton based this designation on his training and experience. (*Id.* 28:20–29:24).
[2] Officer Chatterton testified that taking an individual "into custody" is not synonymous with arresting them. (Evidentiary Hear'g AM Tr. 28:20–29:24). Rather, it is a precautionary measure meant to account for officer safety. Here, Officer Chatterton noted taking Defendant "into custody" was necessary because the vehicle was in a high crime neighborhood that was poorly lit, the vehicle was not cleared of other passengers, the vehicle was possibly stolen, Defendant was not following his commands as to where he should stand, and Officer Chatterton was alone. (*Id.*).

picked up . . . and . . . rented the vehicle." (*Id.* 30:8–14).  Defendant stated that Officer Chatterton could call the owner of the vehicle to prove his lawful possession, whom Defendant referred to as "Jenni—Tiffany." (Officer Chatterton Body Camera Footage at 3:05–3:18, Ex. A to Def. Mot. Suppress).  After obtaining Defendant's name and date of birth, Officer Chatterton continued to question Defendant to determine if he was lawfully in possession of the vehicle or if it was stolen. (*Id.* 3:50–4:00, Ex. A to Def. Mot. Suppress).  Defendant proffered that he rented the vehicle two days ago from Tiffany for $76.00 through Turo, a car rental application. (*Id.* 5:05–5:26, Ex. A to Def. Mot. Suppress).

LVMPD Patrol Officers Victor Hernandez and Zane Johnson then arrived on the scene and conducted a "protective sweep" of the vehicle to "clear" the vehicle of other people. (Evidentiary Hear'g AM Tr. 35:11–36:13, 37:6–13, 38:13–19).  Officer Chatterton testified that while this sweep was occurring, Defendant was not listening to commands about where to stand and repeatedly turned his back on Officer Chatterton to look at the vehicle. (*Id.* 40:4–18).  This indicated to Officer Chatterton that Defendant was concerned with something in the vehicle or was impaired and could not understand the instructions. (*Id.*).

Officers Hernandez and Johnson tried to open the car's trunk to ensure no one was inside, but realized it was locked. (Officer Chatterton Body Camera Footage at 6:10–30, Ex. A to Def. Mot. Suppress); (Officer Johnson Body Camera Footage 00:24–48, Ex. E to Def. Mot. Suppress).  The Officers asked Defendant for the keys, but he refused. (Officer Chatterton Body Camera Footage at 6:10–30, Ex. A to Def. Mot. Suppress).  Defendant's refusal concerned Officer Chatterton, who proceeded to ask Defendant the name of the person who owned the vehicle. (Officer Chatterton Body Camera Footage at 7:00–06, Ex. A to Def. Mot. Suppress).  Defendant then claimed he did not know the owner of the vehicle because his "baby momma" rented the car. (*Id.* 7:09–19, Ex. A to Def. Mot. Suppress).  This inconsistency caused

Officer Chatterton to think Defendant was making up a story about the vehicle and that Defendant was not legally in possession of the vehicle. (Evidentiary Hear'g AM Tr. 42:9–23).

Officer Chatterton then re-entered his vehicle to confirm with DMV the information that the Taurus was stolen.  Officer Chatterton confirmed that the vehicle was reported stolen and dispatch informed him that the reported owner ("RO") wished to retrieve the vehicle. (*Id.* 44:16–23).  Officer Chatterton testified that per LVMPD policy, once the RO wants to retrieve the vehicle, officers perform an inventory search of the vehicle to list the property found in the vehicle before it is returned. (*Id.* 45:11–46:25).

Before conducting an inventory search, Officer Chatterton and Officer Hernandez considered whether Defendant believed he was in lawful possession of the vehicle. Specifically, the Officers discussed the possibility that another person had stolen the vehicle and rented it to Defendant through the Turo app. (Officer Chatterton Body Camera Footage at 8:50–9:48, 29:00–30, Ex. A to Def. Mot. Suppress).  This possibility was supported by the fact that Defendant was in possession of and had keys to the Taurus, the ignition was not punched, the VIN was not scratched, and Officers found no burglary tools or evidence of theft in the car or on Defendant. (Evidentiary Hear'g AM Tr. 119:10–120:15).  Officer Chatterton suggested that Defendant show him the rental information on his phone. (Officer Chatterton Body Camera Footage at 8:50–9:48, Ex. A to Def. Mot. Suppress).

As Officer Chatterton and Officer Hernandez retrieved Defendant's phone to corroborate Defendant's story, Officer Johnson began an inventory search of the Taurus. (Officer Chatterton Body Camera Footage at 10:24–30, Ex. A to Def. Mot. Suppress); (Officer Johnson Body Camera Footage 4:58–5:20, Ex. E to Def. Mot. Suppress).  At this time, Defendant changed his story again and claimed that the vehicle was rented an hour before the stop by his "baby's momma" from someone at a Siegel Suites for $350.00. (Evidentiary Hear'g AM Tr. 53:11–16).  Before Officer Chatterton and Officer Hernandez were able to access Defendant's

phone, Officer Johnson found a weapon under the driver's seat of the Taurus. (Officer Johnson Body Camera Footage 6:20–7:10, Ex. E to Def. Mot. Suppress).  Upon hearing this, Defendant then adjusted his waistband, which concerned the Officers. (Evidentiary Hear'g AM Tr. 57:9–24).  They immediately conducted another pat-down search of Defendant, during which a magazine dropped to the ground. (Officer Chatterton Body Camera Footage at 12:40–13:50, Ex. A to Def. Mot. Suppress); (Officer Hernandez Body Camera Footage at 6:25–40, Ex. G to Def. Mot. Suppress).  Officer Chatterton ran a record check on Defendant and determined that he was a prohibited person with multiple felony convictions. (Officer Chatterton Body Camera Footage at 17:40–19:23, Ex. A to Def. Mot. Suppress).  The officers arrested Defendant and placed him in the patrol car. (R&R 4:22).  Shortly after, Defendant experienced a medical emergency, which he indicated was likely caused by two fentanyl pills he had taken earlier in the evening. (Evidentiary Hear'g AM Tr. 82:10–17).  He was thereafter transported to the hospital for medical treatment.

     In his Motion to Suppress, Defendant asks the Court to exclude evidence stemming from the searches of (1) the Taurus where the officers found the gun with an extended magazine and (2) his person where the second magazine fell from his waistband. (Mot. Suppress, ECF No. 33).  The Magistrate Judge held an evidentiary hearing on Defendant's Motion. (ECF Nos. 47, 49, 50).  Following the hearing, the parties simultaneously filed supplemental briefs. (ECF Nos. 57, 58).  The Magistrate Judge then issued a Report and Recommendation determining that Defendant had standing to challenge the searches but recommending that the Court deny Defendant's Motion to Suppress. (*See generally* R&R).  Defendant filed an Objection. (ECF No. 72).

     In his Objection, Defendant argued that had Officers given him the chance to pull up the Turo app on his phone to show proof of his rental, the Officers may have released the car back to him. (Obj. 22:3–5).  In Response, the Government—for the first time—attached records from

Turo indicating that the Taurus Defendant drove was never rented to anyone from April 15 to April 22, 2022, directly contradicting Defendant's statements to Officers. (Turo Records at 1–5, Ex. 1 to Resp., ECF No. 77-1).  While the Government had this evidence before the evidentiary hearing held by the Magistrate Judge, it explained it did not disclose these records earlier because it did "not perceive the Turo evidence as relevant or otherwise disclosable in discovery." (Resp. 11:21–24).  Instead, the Government maintained that the records' relevance was limited to impeachment purposes had Defendant testified that he rented the car on Turo. (*Id.*).  The Government explained it only now included the evidence because Defendant argued for the first time in his Objection that had Officers given him the chance to show his Turo documentation, he would have regained possession of the vehicle. (Gov. Resp. Def. Mot. Leave File Reply at 2:7–17, ECF No. 84).

Because of the significance of the Government's belatedly disclosed evidence, the Court's discussion below is limited to whether consideration of this evidence is warranted, and if so, how the Court should proceed in reviewing the Magistrate Judge's R&R and the parties' Objections.

## II. LEGAL STANDARD

A district court has the option, but is not required, to look at new arguments or evidence presented for the first time in objections to an R&R. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).  The district court must exercise its discretion in determining whether new evidence should be considered "rather than summarily accepting or denying" the new evidence. *Howell*, 231 F.3d at 621.  This is because the "magistrate judge system was designed to alleviate the workload of district courts . . . [and] [t]o require a district court to consider evidence not previously presented to the magistrate would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Howell*, 231 F.3d at 622 (citations omitted).  "Systemic efficiencies would be frustrated

and the magistrate judge's role reduced to that of a mere dress rehearsal if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988).

## III. DISCUSSION

It is undisputed that the Turo records were never before the Magistrate Judge. (*See generally* Def. Mot. Leave. File Reply, ECF No. 83); (Gov. Resp. Def. Mot. Leave File Reply). And contrary to the Government's representation, the relevancy of the Turo records is not limited to impeachment purposes: The Turo records may bear directly on whether Defendant has standing to contest the search of the Taurus.

In general, only a vehicle's owner or an individual with a legitimate privacy interest in the vehicle may challenge a search of the vehicle. *See United States v. Wanless*, 882 F.2d 1459, 1462 (9th Cir. 1989) (citation omitted). Defendant's expectation of privacy rests on his contention that he rented the Taurus on Turo and lacked knowledge of the possibly stolen character of the vehicle. But if Defendant relies on a lack of knowledge to establish a reasonable expectation of privacy in the Taurus, he bears the burden of proof on such facts. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see also* Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3(e) at 264 n. 345 (5th ed. 2012) ("The burden is on the defendant to establish standing . . . and . . . a conclusory claim of ownership will therefore not necessarily suffice.").

In *United States v. Cates*, the Northern District of Texas confronted a similar factual scenario. 641 F. Supp. 2d 613, 615 (N.D. Tex. 2009). The court there found that an individual acquiring a stolen vehicle innocently from an "unscrupulous" car dealer would present a legitimate question about the expectation of privacy in an "unwittingly stolen" vehicle. *Id.*; *see also United States v. Clemons*, No. 10-cr-193, 2011 WL 781373, at *2 (D. Idaho Feb. 25, 2011)

(observing that the court's standing inquiry would change if the defendant were to have argued "he did know the pickup was stolen, he had lawful possession of the pickup, the owner of the pickup had let him borrow the pickup, or some other similar argument"). But to present the possibility of standing, the court explained the defendant must present "proof of such a purchase." Cates, 614 F. Supp. at 616.

Here, the Turo records introduced by the Government cast serious doubt on whether Defendant can meet his burden because the records directly rebut his contention that he rented the Tauros. Without proof of rental, Defendant's expectation of privacy rests primarily on his self-serving statements that he did not know the Tauros was possibly stolen. *See United States v. Sandoval*, No. 2:15-cr-00159, 2015 WL 13738812, at *4 (D. Nev. Oct. 21, 2015) (determining the defendant lacked standing where he only relied on his "own self-serving statement that he did know the vehicle was stolen in submitting that he had standing to contest the search of the vehicle). And even if Defendant did not know the Tauros was stolen, the absence of rental records indicates he lacked lawful possession of the vehicle. Based on the significance of the Turo records as it relates to standing, the Court finds it must be considered.

Although the Turo records must be considered, fairness concerns prevent the Court from rendering a decision at this juncture. The Government's belated disclosure has deprived Defendant of the opportunity to confront this evidence and potentially explain how it is otherwise consistent with his multiple statements to Officers. It would be manifestly unfair for the Court to rule on the Magistrate Judge's R&R and the parties' Objections without first giving Defendant the opportunity to review and consider the Turo records. Accordingly, the Court **REMANDS** this case to the Magistrate Judge with instructions to reconsider whether Defendant has standing to contest the underlying searches in light of the Turo records.

///

///

## IV. DISCUSSION

**IT IS HEREBY ORDERED** that the Court **VACATES** the Magistrate Judge's Report and Recommendation, (ECF No. 60), and **REMANDS** this case to the Magistrate Judge with instructions to reconsider whether Defendant has standing to contest the underlying searches in light of the Turo records.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File a Reply, (ECF No. 78), is **DENIED as moot.**

**DATED** this __3__ day of November, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court