# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| United States of America, | Case No. 2:22-cr-00129-GMN-DJA |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | [ECF No. 33] |
| Christian DeMarco Thomas, | |
| Defendant. | |

Defendant Christian DeMarco Thomas is charged in a two-count indictment with Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 17). Law enforcement arrested Thomas late in the evening on April 21, 2022, after a Las Vegas Metropolitan Police Department (LVMPD) officer determined that the car which Thomas was driving was reported stolen. The officer pulled Thomas over, confirmed the car was stolen, and conducted a search of both the car and Thomas, which searches resulted in finding a gun with an extended magazine under the car seat and a second magazine on Thomas' person. In moving to suppress that evidence, one of the arguments Thomas raised was that he had standing to challenge the search of the car, which led to the search of his person, because he informed officers that he had rented the car through the car-rental application Turo. (ECF No. 33).

I recommended that the Honorable District Judge Gloria M. Navarro deny the motion to suppress. (ECF No. 60). As part of that recommendation, I found that Thomas had standing to challenge the search of the car, in part because Thomas asserted that he had rented the car. (*Id.* at 5-7). The Government objected to that recommendation, attaching evidence from Turo showing that the car was never rented to anyone from April 15 to April 22, 2022. (ECF No. 77-1).

Given this new evidence, Judge Navarro referred the standing issue back to me to reconsider the report and recommendation. (ECF No. 87). Because I find that Thomas had no

standing to challenge the search of the car based on the new evidence from Turo, I amend my recommendation to recommend denying the motion to suppress on standing grounds.

## FACTUAL BACKGROUND

On April 21, 2022, LVMPD Officer Michael Chatterton noticed a Ford Taurus "ping-ponging back and forth in its lane," a sign of possible impaired or distracted driving. (Hearing Transcript, ECF No. 50, at 17:20-18:11). Officer Chatterton turned his body camera on and ran a DMV check on the Taurus, which check showed that the car was possibly stolen. (*Id.* at 20:6-19). "Possibly stolen" meant the car had been reported stolen, but no officer had followed up with an interview of the person who reported it stolen or submitted a report. (*Id.*).

The Taurus then pulled into a residential driveway in what Officer Chatterton described as a "high crime area" based on his training and experience. (*Id.* at 28:20-29:24). Officer Chatterton then turned on his lights and got out to perform a high-risk stop and take the driver—Thomas—"into custody." (*Id.* at 27:16-20). Officer Chatterton handcuffed Thomas, explaining that the Taurus was possibly stolen. (*Id.* at 30:8-14). Officer Chatterton testified that Thomas was "kind of…in shock" upon hearing that and stated that he had "just picked up…and…rented the vehicle." (*Id.*).

Thomas told Officer Chatterton that he could call the car's owner—whom Thomas referred to as "Jenni—Tiffany"—to prove that Thomas was lawfully possessing it. (Chatterton Body Camera Footage, ECF No. 34, at 3:05-18). Thomas later added that he had rented the car two days before from Tiffany for $76.00 through the Turo app. (*Id.* at 5:05-26). Officer Chatterton and other LVMPD officers who arrived on the scene—Officers Victor Hernandez and Zane Johnson—then began to conduct a "protective sweep" of the Taurus. (Hearing Transcript, ECF No. 50 at 35:11-36:13, 37:6-13, 38:13-19). When Thomas refused to give officers the keys to open the trunk of the car, Officer Chatterton again began questioning Thomas about who owned the car. (Chatterton Body Camera Footage ECF No. 34, at 6:10-30, 7:00-06). Thomas responded that he did not know the owner because his "baby momma" rented the car. (*Id.* at 7:09-19).

Officer Chatterton later confirmed with the DMV that the Taurus was stolen and dispatch informed him that the registered owner (RO)—an individual named Brandon Knowles—wanted to pick it up. (Hearing Transcript, ECF No. 50 at 24:18-25:2, 44:16-23, 45:11-46:25). Officer Chatterton testified that, per LVMPD policy, once an RO wants to pick up a car, officers perform an inventory search of the car to list property found inside before it is returned. (*Id.*). Given Thomas' statements that he had rented the car, officers considered the possibility that another person had stolen the car and rented it to Thomas through Turo. (Chatterton Body Camera Footage, ECF No. 34, at 8:50-9:48, 29:00-30). This possibility was supported by the fact that Thomas had the keys, the ignition was not punched, the VIN was not scratched, and officers found no burglary tools or evidence of theft in the car or on Thomas. (Hearing Transcript, ECF No. 50, at 119:10-120:15).

So, Officer Chatterton asked that Thomas show the officers the rental information on Thomas' phone. (Chatterton Body Camera Footage, ECF No. 34, at 8:50-9:48). While Officer Chatterton and Officer Hernandez retrieved Thomas' phone and Officer Johnson began an inventory search of the car, Thomas again changed his story to claim that his "baby's momma" rented the car an hour before from someone at Siegel Suites. (Hearing Transcript, ECF No. 50, at 50:7-14, 52:15-53:4). Before the officers were able to access Thomas' phone, however, Officer Johnson announced that he had found a weapon under the Taurus' driver's seat. (Johnson Body Camera Footage, ECF No. 34, at 6:20-7:10). Upon hearing this, Thomas began adjusting his waistband, which concerned the officers. (Hearing Transcript, ECF No. 50, at 57:9-24). They conducted another pat-down search of Thomas, during which search a magazine dropped to the ground. (Chatterton Body Camera Footage, ECF No. 34, at 12:40-13:50).

Officer Chatterton then ran a record check on Thomas and determined that he was a prohibited person with multiple felony convictions. (*Id.* at 17:40-19:23). Officers arrested Thomas and placed him in a patrol car. Shortly after, Thomas began experiencing a medical emergency, which he said was probably caused by two fentanyl pills he had taken earlier that evening. (Hearing Transcript, ECF No. 50, at 82:10-17). Thomas was then transported to the hospital.

**PROCEDURAL BACKGROUND**

Thomas moved to suppress the evidence of the gun with an extended magazine and the second magazine officers found in searching the car and in searching Thomas' person. (ECF No. 33). In recommending that Judge Navarro deny the motion to suppress, I first found that Thomas had standing to challenge the search of the Taurus:

> There is no dispute that the vehicle was listed as possibly stolen, and there were absolutely no indicia that the vehicle was stolen such as a broken steering column or otherwise rigged ignition (in fact, Thomas had the keys), a defaced VIN, or burglary tools inside that would suggest that Thomas did not have permission to possess the vehicle. Additionally, Thomas maintained from the outset that he had rented the vehicle. While he made several contradictory statements regarding the circumstances of the rental, that does not rise to the level of knowledge that the vehicle was stolen, especially when investigating officers acknowledged that Thomas could have unwittingly rented the vehicle from someone on the Turo app not knowing that person had stolen the car. Given these facts, Thomas has established that he had a reasonable expectation of privacy that would permit his Fourth Amendment challenge to the search of the vehicle.

(ECF No. 60 at 7).

Thomas objected to the report and recommendation, arguing that, had officers given him the chance to pull up the Turo app on his phone to prove that he had rented the car, officers may have released the car back to him. (ECF No. 72 at 22). In response, the Government, for the first time, attached records from Turo indicating that the Taurus Thomas drove was never rented to anyone from April 15 to April 22, 2022. (Turo Records, ECF No. 77-1). Judge Navarro thus remanded the issue to me to reconsider whether Thomas has standing to contest the underlying searches in light of the Turo records. (ECF No. 87).

I held a hearing on the matter on January 9, 2024. (ECF No. 89). At that hearing, Thomas' counsel indicated that Thomas does not take a position regarding the Turo records. I thus find that, given the evidence of the Turo records and the inconsistencies in Thomas' story on the night of his arrest, Thomas does not have standing to contest the search of the Taurus. I recommend denying his motion to suppress.

## LEGAL STANDARDS AND ANALYSIS

"To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *U.S. v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). Generally, a person does not possess a reasonable expectation of privacy in a vehicle in which he has no property or possessory interest. *See Rakas v. Illinois*, 439 U.S. 128, 148-149 (1978); *see also U.S. v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006). However, a defendant who lacks an ownership interest may still have standing to challenge a search upon a showing of "joint control" or "common authority" over the property searched. *Thomas*, 447 F.3d at 1198.

The Ninth Circuit has explored how permission and authority impact a defendant's reasonable expectation of privacy in a car that the defendant does not own in *U.S. v. Portillo*, and *U.S. v. Thomas*. In *Portillo*, the Ninth Circuit concluded that a defendant who had both permission to use his friend's car *and* the keys to the ignition and trunk had the requisite legitimate expectation of privacy necessary to challenge a search. *U.S. v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980). In *Thomas*, the Ninth Circuit found that an individual driving a rental car who was not authorized to drive it under the terms of the rental agreement and who had not received permission to drive it from the authorized renter had no standing to challenge a search of that rental car. *Thomas*, 447 F.3d at 1198-99.

Here, given the newly introduced evidence that Turo did not rent the Taurus to anyone between April 15 to April 22, 2022, I find that Thomas did not have a legitimate expectation of privacy in the Taurus. I previously noted that "Thomas has established standing, albeit barely, to challenge the search of the vehicle." (ECF No. 60 at 7). In reaching that conclusion, I relied on the evidence that "Thomas maintained from the outset that he had rented the vehicle," even though he made several contradictory statements regarding the circumstances of that rental. (*Id.*). However, given the evidence from Turo that Thomas did not rent the car through their service, I find that Thomas has not established a property or possessory interest in the Taurus such that he has standing.

With the new evidence from Turo, I cannot find that Thomas had either permission or authority to drive the car. Unlike the defendant in *Portillo* who had both keys and permission

from the owner, Thomas has not demonstrated that he had permission from either an owner or renter to drive the car.  This makes Thomas like the defendant in *Thomas*, who was neither authorized by the rental company to drive the car nor had permission from the authorized renter.  Here, Thomas gave an inconsistent name—"Jenni—Tiffany"—when he told officers he could call the owner of the car to prove that he had it lawfully.  Thomas then changed his story to claim that he did not know the owner, but that the mother of his child had rented the car for $76 two days before.  Thomas then changed his story again to claim that the mother of his child had rented the car an hour before.  Not only could Thomas not consistently explain who—whether owner or authorized renter—gave him permission to drive the car, the RO reported the car stolen and, when contacted by police, confirmed that the car was stolen and that the RO wished to pick it up.  Finally, a key portion of Thomas' story—that the car was rented through Turo—is now demonstrably false.

      I thus amend my recommendation to find that Thomas did not have standing to challenge the search of the Taurus.  Without that standing, I find suppression of the gun and magazine that officers found while searching the Taurus is not appropriate.  Additionally, I previously found that finding the gun under the seat was one of the factors that legitimized the officers' *Terry* frisk.  That frisk resulted in the officers finding the second magazine on Thomas' person.  So, I find that the Turo evidence strengthens my analysis that suppression of the second magazine is also not appropriate.  I recommend denying the motion to suppress on these grounds.

      Other than strengthening my analysis that the *Terry* frisk was supported by reasonable suspicion, this amendment does not change the remainder of my previous recommendation.  I still find that the inventory search of the car was valid, the officers' *Terry* stop and frisk were supported by reasonable suspicion, that officers would have inevitably found the gun with the extended magazine and second magazine, and that officers conducted the inventory search and *Terry* frisk of Thomas in good faith.  So, I recommend that, even if standing is not sufficient grounds to deny the motion to suppress, that the motion to suppress still be denied on the grounds articulated in the remainder of my recommendation.

## CONCLUSION AND RECOMMENDATON

IT IS THEREFORE RECOMMENDED that Thomas' Motion to Suppress Evidence (ECF No. 33) be DENIED.

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  January 11, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE