# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:22-cr-00129-GMN-DJA |
| vs. | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| CHRISTIAN DEMARCO THOMAS, | ) | **MOTION TO SUPPRESS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Second Report and Recommendation ("R&R") of United States Magistrate Judge Daniel J. Albregts, (ECF No. 90), recommending that the Court deny Defendant Christian DeMarco Thomas's Motion to Suppress, (ECF No. 33).

For the reasons discussed below, the Court **ADOPTS** the Magistrate Judge's Second R&R and **DENIES** Defendant's Motion to Suppress.

## I.    BACKGROUND

Following Defendant's arrest during an encounter between Defendant and the Las Vegas Metro Police Department ("LVMPD"), Defendant was indicted for one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Am. Indictment, ECF No. 17).  The specific facts underlying the encounter are outlined below.

On April 21, 2022, LVMPD Patrol Officer Michael Chatterton was working the swing shift alone in a marked patrol vehicle wearing a body camera. (Evidentiary Hear'g AM Tr. 15:11–15, 17:2–6, ECF No. 50).  Around 11:15 p.m., a Ford Taurus caught Officer Chatterton's attention because it was "ping-ponging back and forth in its lane" and slowing down despite no vehicle being in front of it, signs of possible impaired or distracted driving. (*Id.* 17:20–18:11).

Officer Chatterton activated his body camera and ran a DMV registration check on the Taurus. (*Id.* 20:6–19). A hit returned indicating the car was registered to Brandon Knowles and was possibly stolen. (*Id.*). "Possibly stolen" meant the car had been reported stolen but no officer followed up with an interview of the individual who reported it stolen nor submitted a subsequent report. (*Id.*).

The vehicle subsequently stopped and pulled into a residential driveway in what Officer Chatterton described as a "high crime area."[1] Officer Chatterton activated his lights and advised dispatch that he was preparing to perform a high-risk stop and take the driver "into custody."[2] (*Id.* 27:16–20). Officer Chatterton exited his vehicle and issued commands to the driver as he exited the Taurus. The driver was later identified as Defendant. (R&R 3:1–2).

Officer Chatterton handcuffed Defendant and explained to him the vehicle was possibly stolen. (Evidentiary Hear'g AM Tr. 30:8–14). Officer Chatterton testified that Defendant was "kind of . . . in shock" upon hearing the vehicle was possibly stolen and stated that he "just picked up . . . and . . . rented the vehicle." (*Id.* 30:8–14). Defendant stated that Officer Chatterton could call the owner of the vehicle to prove his lawful possession, whom Defendant referred to as "Jenni—Tiffany." (Officer Chatterton Body Camera Footage at 3:05–3:18, Ex. A to Def. Mot. Suppress). After obtaining Defendant's name and date of birth, Officer Chatterton continued to question Defendant to determine if he was lawfully in possession of the vehicle or if it was stolen. (*Id.* 3:50–4:00, Ex. A to Def. Mot. Suppress). Defendant proffered that he rented the vehicle two days ago from Tiffany for $76.00 through Turo, a car rental application. (*Id.* 5:05–5:26, Ex. A to Def. Mot. Suppress).

---

[1] Officer Chatterton based this designation on his training and experience. (*Id.* 28:20–29:24).

[2] Officer Chatterton testified that taking an individual "into custody" is not synonymous with arresting them. (Evidentiary Hear'g AM Tr. 28:20–29:24). Rather, it is a precautionary measure meant to account for officer safety. Here, Officer Chatterton noted taking Defendant "into custody" was necessary because the vehicle was in a high crime neighborhood that was poorly lit, the vehicle was not cleared of other passengers, the vehicle was possibly stolen, Defendant was not following his commands as to where he should stand, and Officer Chatterton was alone. (*Id.*).

LVMPD Patrol Officers Victor Hernandez and Zane Johnson then arrived on the scene and conducted a "protective sweep" of the vehicle to "clear" the vehicle of other people. (Evidentiary Hear'g AM Tr. 35:11–36:13, 37:6–13, 38:13–19).  Officer Chatterton testified that while this sweep was occurring, Defendant was not listening to commands about where to stand and repeatedly turned his back on Officer Chatterton to look at the vehicle. (*Id.* 40:4–18).  This indicated to Officer Chatterton that Defendant was concerned with something in the vehicle or was impaired and could not understand the instructions. (*Id.*).

Officers Hernandez and Johnson tried to open the car's trunk to ensure no one was inside, but realized it was locked. (Officer Chatterton Body Camera Footage at 6:10–30, Ex. A to Def. Mot. Suppress); (Officer Johnson Body Camera Footage 00:24–48, Ex. E to Def. Mot. Suppress).  The Officers asked Defendant for the keys, but he refused. (Officer Chatterton Body Camera Footage at 6:10–30, Ex. A to Def. Mot. Suppress).  Defendant's refusal concerned Officer Chatterton, who proceeded to ask Defendant the name of the person who owned the vehicle. (Officer Chatterton Body Camera Footage at 7:00–06, Ex. A to Def. Mot. Suppress).  Defendant then claimed he did not know the owner of the vehicle because his "baby momma" rented the car. (*Id.* 7:09–19, Ex. A to Def. Mot. Suppress).  This inconsistency caused Officer Chatterton to think Defendant was making up a story about the vehicle and that Defendant was not legally in possession of the vehicle. (Evidentiary Hear'g AM Tr. 42:9–23).

Officer Chatterton then re-entered his vehicle to confirm with DMV the information that the Taurus was stolen.  Officer Chatterton confirmed that the vehicle was reported stolen and dispatch informed him that the reported owner ("RO") wished to retrieve the vehicle. (*Id.* 44:16–23).  Officer Chatterton testified that per LVMPD policy, once the RO wants to retrieve the vehicle, officers perform an inventory search of the vehicle to list the property found in the vehicle before it is returned. (*Id.* 45:11–46:25).

///

1        Before conducting an inventory search, Officer Chatterton and Officer Hernandez

2   considered whether Defendant believed he was in lawful possession of the vehicle.

3   Specifically, the Officers discussed the possibility that another person had stolen the vehicle

4   and rented it to Defendant through the Turo app. (Officer Chatterton Body Camera Footage at

5   8:50–9:48, 29:00–30, Ex. A to Def. Mot. Suppress).  This possibility was supported by the fact

6   that Defendant was in possession of and had keys to the Taurus, the ignition was not punched,

7   the VIN was not scratched, and Officers found no burglary tools or evidence of theft in the car

8   or on Defendant. (Evidentiary Hear'g AM Tr. 119:10–120:15).  Officer Chatterton suggested

9   that Defendant show him the rental information on his phone. (Officer Chatterton Body Camera

10  Footage at 8:50–9:48, Ex. A to Def. Mot. Suppress).

11       As Officer Chatterton and Officer Hernandez retrieved Defendant's phone to corroborate

12  Defendant's story, Officer Johnson began an inventory search of the Taurus. (Officer

13  Chatterton Body Camera Footage at 10:24–30, Ex. A to Def. Mot. Suppress); (Officer Johnson

14  Body Camera Footage 4:58–5:20, Ex. E to Def. Mot. Suppress).  At this time, Defendant

15  changed his story again and claimed that the vehicle was rented an hour before the stop by his

16  "baby's momma" from someone at a Siegel Suites for $350.00. (Evidentiary Hear'g AM Tr.

17  53:11–16).  Before Officer Chatterton and Officer Hernandez were able to access Defendant's

18  phone, Officer Johnson found a weapon under the driver's seat of the Taurus. (Officer Johnson

19  Body Camera Footage 6:20–7:10, Ex. E to Def. Mot. Suppress).  Upon hearing this, Defendant

20  then adjusted his waistband, which concerned the Officers. (Evidentiary Hear'g AM Tr. 57:9–

21  24).  They immediately conducted another pat-down search of Defendant, during which a

22  magazine dropped to the ground. (Officer Chatterton Body Camera Footage at 12:40–13:50,

23  Ex. A to Def. Mot. Suppress); (Officer Hernandez Body Camera Footage at 6:25–40, Ex. G to

24  Def. Mot. Suppress).  Officer Chatterton ran a record check on Defendant and determined that

25  he was a prohibited person with multiple felony convictions. (Officer Chatterton Body Camera

Footage at 17:40–19:23, Ex. A to Def. Mot. Suppress).  The officers arrested Defendant and placed him in the patrol car. (R&R 4:22).  Shortly after, Defendant experienced a medical emergency, which he indicated was likely caused by two fentanyl pills he had taken earlier in the evening. (Evidentiary Hear'g AM Tr. 82:10–17).  He was thereafter transported to the hospital for medical treatment.

In his Motion to Suppress, Defendant asks the Court to exclude evidence stemming from the searches of (1) the Taurus where the officers found the gun with an extended magazine and (2) his person where the second magazine fell from his waistband. (Mot. Suppress, ECF No. 33).  The Magistrate Judge held an evidentiary hearing on Defendant's Motion. (ECF Nos. 47, 49, 50).  Following the hearing, the parties simultaneously filed supplemental briefs. (ECF Nos. 57, 58).  The Magistrate Judge then issued his First Report and Recommendation determining that Defendant had standing to challenge the searches but recommending that the Court deny Defendant's Motion to Suppress. (*See generally* First R&R).  Defendant filed an Objection. (ECF No. 72).

In his Objection, Defendant argued that had Officers given him the chance to pull up the Turo app on his phone to show proof of his rental, the Officers may have released the car back to him. (Obj. 22:3–5).  In Response, the Government—for the first time—attached records from Turo indicating that the Taurus Defendant drove was never rented to anyone from April 15 to April 22, 2022, directly contradicting Defendant's statements to Officers. (Turo Records at 1–5, Ex. 1 to Resp., ECF No. 77-1).  Because the Turo records were integral to determining whether Defendant has standing to contest the search of the Taurus, the Court remanded this case to the Magistrate Judge with instructions to reconsider whether Defendant has standing to contest the underlying searches in light of the Turo records. (Order, ECF No. 87).

The Magistrate Judge held an evidentiary hearing at which Defendant's counsel "indicated that [Defendant] [did] not take a position regarding the Turo records. (Second R&R

4:23–24, ECF No. 90).  The Magistrate Judge found that considering the Turo records and the inconsistencies in Defendant's story on the night of the arrest, Defendant does not have standing to contest the search of the Taurus. (*Id.* 4:23–27, 6:1–19).  The Magistrate Judge further recommended that "even if standing is not sufficient grounds to deny" Defendant's Motion to Suppress, the Motion still be denied on the grounds articulated in his First R&R. (*Id.* 6:25–27).  Defendant did not file an objection to the Magistrate Judge's Second R&R.

## II.   **LEGAL STANDARD**

Local Rule IB 3-2 states that "any party may file specific written objections to the findings and recommendations of a magistrate judge made pursuant to Local Rule IB 1-4." 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2.  Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made.  *Id.*  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).  Where a party fails to object, however, the Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (citing 28 U.S.C. § 636(b)(1)).  Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's R&R where no objections have been filed. *See, e.g., United States v. Reyna–Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003).  Accordingly, the Court will conduct a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which objections were made.

## III.   **DISCUSSION**

Here, no objections were filed, and the deadline to do so has passed. (*See* Second R&R) (setting a January 25, 2023, deadline for objections).  Thus, the Court is not obligated to conduct a *de novo* review of the Second R&R.  Nevertheless, the Court has conducted a *de novo* review of the Second R&R and record in this case and finds that Defendant lacks standing

1    to bring his Motion for Suppress, and even if he had standing, his Fourth Amendment rights

2    were not violated.  As standing is a threshold requirement to seek suppression, the Court begins

3    there. *See United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993) (noting that a

4    demonstration of a legitimate expectation of privacy is a threshold requirement to seek

5    suppression).

6         "[A] person seeking to exclude evidence allegedly obtained in violation of the fourth

7    amendment must have standing to challenge the illegal conduct that led to the discovery of the

8    evidence." *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005).  To have standing, a

9    defendant must have a reasonable expectation of privacy in the area searched or seized. *United*

10   *States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir. 1999).  "To demonstrate this, the defendant[]

11   must manifest a subjective expectation of privacy in the area searched, and their expectation

12   must be one that society would recognize as objectively reasonable." *Id.*  It is the defendant's

13   burden to establish that, under the totality of the circumstances, he has standing—that is, that

14   the search or seizure violated the defendant's legitimate expectation of privacy. *Id.*

15        In general, only a vehicle's owner or an individual with a legitimate privacy interest in

16   the vehicle may challenge a search of the vehicle. *See United States v. Wanless*, 882 F.2d 1459,

17   1462 (9th Cir. 1989) (citation omitted).  Defendant's expectation of privacy rests on his

18   contention that he or his girlfriend rented the Taurus on Turo and lacked knowledge of the

19   possibly stolen character of the vehicle.  But if Defendant relies on a lack of knowledge to

20   establish a reasonable expectation of privacy in the Taurus, he bears the burden of proof on

21   such facts. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see also* Wayne R. LaFave,

22   Search and Seizure: A Treatise on the Fourth Amendment § 11.3(e) at 264 n. 345 (5th ed.

23   2012) ("The burden is on the defendant to establish standing . . . and . . . a conclusory claim of

24   ownership will therefore not necessarily suffice.").

25   ///

In *United States v. Cates*, the Northern District of Texas confronted a similar factual scenario. 641 F. Supp. 2d 613, 615 (N.D. Tex. 2009).  The court there found that an individual acquiring a stolen vehicle innocently from an "unscrupulous" car dealer would present a legitimate question about the expectation of privacy in an "unwittingly stolen" vehicle. *Id.*; *see also United States v. Clemons*, No. 10-cr-193, 2011 WL 781373, at *2 (D. Idaho Feb. 25, 2011) (observing that the court's standing inquiry would change if the defendant were to have argued "he did know the pickup was stolen, he had lawful possession of the pickup, the owner of the pickup had let him borrow the pickup, or some other similar argument").  But to present the possibility of standing, the court explained the defendant must present "proof of such a purchase." *Cates*, 614 F. Supp. at 616.

The Court finds Defendant does not have standing to challenge the search of the Taurus for three reasons.  First, the record shows Defendant did not have a possessory or property interest in the Taurus, as the Taurus was legally registered to Brandon Knowles and was reported as possibly stolen. (Evidentiary Hear'g AM Tr. 20:6–19).  Thus, Defendant did not own the vehicle.  Second, the Turo records introduced by the Government directly rebuts Defendant's contention that the Tauros was rented, and thereby he had permission or authority to drive the car despite lacking a possessory interest.  Third, without proof of rental, Defendant's expectation of privacy rests on his self-serving statements that he did not know the Tauros was possibly stolen. *See United States v. Caymen*, 404 F.3d 1196 (9th Cir. 2005) (defendant had no standing to contest search of stolen laptop, despite his statements to authorities that he bought the laptop with his own credit card); *United States v. Sandoval*, No. 2:15-cr-00159, 2015 WL 13738812, at *4 (D. Nev. Oct. 21, 2015) (determining the defendant lacked standing where he only relied on his "own self-serving statement that he did know the vehicle was stolen in submitting that he had standing to contest the search of the vehicle).  But Defendant's contention that he lacked knowledge of the stolen character of the vehicle is

undermined by the multiple, inconsistent stories he gave law enforcement on how he gained authorization and permission to drive the Taurus. (*See* Second R&R 5:27–6:12) (listing the four versions of how Defendant can into possession of the Taurus that Defendant told officers). This is especially true when considering Defendant's story primarily hinged on his contention that the Tarus was rented through Turo, which the record shows is demonstrably false.

In short, Defendant lacked a possessory or property interest in the Taurus, the absence of rental records evidence he lacked permission or authorization to drive the vehicle, and the multiple stories he told law enforcement which have been proven false demonstrate he was aware of the stolen character of the vehicle. It is Defendant's burden of establishing his legitimate expectations of privacy in the vehicle. *Rawling,* 448 U.S. at 104. The evidence he has proffered fails to meet this burden. Without standing, Defendant cannot seek suppression of the fruits of law enforcement's search. *See Singleton*, 987 F.2d at 1449. Accordingly, Defendant's Motion to Suppress is DENIED.[3]

///

///

///

///

///

///

///

///

///

///

---

[3] Even if Defendant established that he had standing, the Court has performed a *de novo* review of the entire record in this matter and finds that Defendant's Fourth Amendment rights were not violated for the reasons set forth by the Magistrate Judge in his R&Rs. (First R&R 7:12–14:24); (Second R&R 6:13–7:27).

**IV.** **CONCLUSION**

      **IT IS HEREBY ORDERED** that the Court **ADOPTS** the Magistrate Second Report and Recommendation, (ECF No. 90), and **DENIES** Defendant's Motion to Suppress, (ECF No. 33).

      **DATED** this __26__ day of January, 2024.

                                  _____

                                  Gloria M. Navarro, District Judge
                                  United States District Court